

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TMS/LTG
F.#2007R01682

*610 Federal Plaza*
*Central Islip, New York  11722*

July 2, 2012

**By ECF and Electronic Mail**

The Honorable Joseph F. Bianco
United States District Court Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

    Re:  United States v. Salvatore Romano
          Criminal Docket No. 09-170 (S-2)(JFB)

Dear Judge Bianco:

    The government writes this letter in advance of the defendant's sentencing, currently scheduled for Thursday, July 5, 2012 at 10:30 a.m.  For the reasons that follow, the Court should sentence the defendant within the applicable advisory United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 108 to 135 months.

I.    Background

    Defendant Salvatore Romano is charged in a two-count indictment with conspiracy to commit mail and wire fraud (Count One) and conspiracy to commit money laundering (Count Two).  Between August 2001 and November 2008, Last Quarter Coin, Inc., American Coin Company, Inc. and All American Coin Company, Inc. ("Subject Companies") were engaged in the business of telemarketing coins.

    During the sale of coins, employees of the Subject Companies falsely informed customers that substantial profits would be realized by investing in coins.  Employees induced customers to purchase and continue to purchase coins by falsely promising the customers that investors existed who would purchase the coins from the customers once the customers had purchased the

"complete roll set." Customers were falsely told that the Subject Companies used "in-house" graders, previously employed at major grading companies, to grade the coins. The customers purchased coins valued at substantially less than their purchase price.

The defendant worked as a salesman for the Subject Companies from August 2001 to March 2008. Presentence Investigation Report ("PSR") ¶ 31. In March 2008, he became the sales manager at All American Coin Company. Id. The defendant held that position until his arrest on November 24, 2008. Id. As sales manager, the defendant "supervised and managed the sales activities of the salesman [sic] of the All American Coin Company," and obtained sales leads for the salesmen. Id.

On September 28, 2010, during jury selection, the defendant pled guilty to Count One, Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. §§ 1341, 1343 and 1349. Id. ¶ 1.

II. Discussion

A. Legal Standard

In United States v. Booker, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns. 543 U.S. 220, 245 (2005); see 18 U.S.C. § 3553(a). After Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2005). Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

More recently, in Gall v. United States, 552 U.S. 38 (2007), the Supreme Court clarified the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial

2

benchmark." Id. at 49 (citation omitted). Next, a sentencing court should "consider all of the §3553 (a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

    B.    <u>Advisory Sentencing Guidelines Calculation</u>

The government's plea agreement sets forth the following Guidelines estimate:

| | |
|---|---:|
| Base Offense Level: (2B1.1(a)(1)) | 7 |
| Plus: Gain amount greater than $1,000,000 (2B1.1(b)(1)(I)) | +16 |
| Plus: 250 or more victims (2B1.1(b)(2)(C)) | +6 |
| Plus: Vulnerable Victims (3A1.1(b)(1)) | +2 |
| Plus: Role (3B1.1(a)) | +3 |
| Less: Acceptance of Responsibility (3E1.1(a)) | -2 |
| Less: Global Point | -1 |
| Total: | <u>31</u> |

<u>See</u> Plea Agreement ¶ 2 ("The Office estimates the likely adjusted offense level under the Guidelines to be level 31[.]").

The parties did not enter a binding agreement as to the Guidelines range; however, the defendant agrees with the estimate contained in the plea agreement. <u>See</u> ECF Docket No. 429, Letter of Brian Davis, Esq. to Court dated Mar. 15, 2012)("I want to advise the Court that after discussing this adjournment with AUSA Thomas Sullivan, that the Defendant does not intend to contest the guideline calculations set forth in the plea agreement and the pre-sentence report, so there will be no need for a hearing.").[1]

---

[1] The PSR also calculates the defendant's offense level at 31. <u>Id</u>. ¶ 58.

Because the defendant has a Criminal History Category of I, id. ¶ 61, his advisory Guidelines range is between 108 and 135 months. Id. ¶ 101.

C. Restitution and Forfeiture

The defendant's plea agreement addresses the issues of restitution and forfeiture. The plea agreement requires the defendant to make restitution in an amount "[t]o be determined by the Court." Id. ¶ 1(e). To that end, the government has submitted a chart under separate cover setting forth the agreed-upon restitution amount for each victim. The defendant, through his counsel, has agreed to an order of restitution in the amount of $20,007,626.06.

For forfeiture, the defendant has agreed to a forfeiture judgment in the amount of one million, one hundred thousand dollars ($1,100,000.00). Id. ¶ 5. The defendant has agreed to make a payment of $175,000 to the United States, at or before the time of sentencing, as partial satisfaction of his forfeiture judgment. Id. The defendant has also agreed to forfeit all right, title and interest in Farmington Savings Bank account #__3996. Id.

III. Argument

A Guidelines Sentence Will Satisfy the Policy Goals Of 18 U.S.C. § 3553(a)

The defendant stands guilty of his role in a criminal conspiracy that defrauded hundreds of victims of millions of dollars. Through the defendant's supervisory role in this conspiracy, he trained other salespeople in how to commit fraud. Given the nature of the crime to which the defendant pled guilty, incarceration within the Guidelines is appropriate here to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). In addition, incarceration within the Guidelines is warranted to further the aims of general and specific deterrence. See id. §§ 3553(a)(2)(B), (C). A Guidelines sentence will also serve to protect the public from future crimes of the defendant.

A. Seriousness Of The Offense

The defendant's commission of mail and wire fraud, over an eight year period, is a serious offense. This defendant alone gained over $1.1 million dollars by defrauding, and supervising

others to defraud, victims throughout the United States.

This defendant, first through his direct contact with victims at Last Quarter Coin Company and American Coin Company, and later through managing salespeople at All American Coin Company, defrauded his victims phone call by phone call.  Every victim was targeted individually, and reloaded at every opportunity.  These were not anonymous victims.  The defendant and his co-conspirators at the Subject Companies could only defraud their victims with repeated telephone calls.

    B.    <u>Promote Respect For The Law</u>

A Guidelines sentence will serve to promote respect for the law.  The depth and breadth of this eight year criminal conspiracy, including misrepresentations about the value of coins, the value of a complete set of coins, and the availability of investors to purchase these coin sets, demonstrates a consistent pattern of disregard for the criminal justice system and for society.

The defendant's role in this conspiracy allowed the defendants, and his many co-conspirators, to prey upon the trusting nature of people throughout the United States.  The government believes that a Guidelines sentence will promote respect for the law, showing others that this fraud, and the process of re-victimizing encouraged by this fraud, is a serious matter which must have serious consequences.

    C.    <u>Protection of the Public</u>

A Guidelines sentence will serve to protect the public from the defendant.  The defendant was a long-time participant and manager in a nationwide fraud scheme that preyed upon people susceptible to telemarketing.  The defendant's actions have had a profound impact on his victims: financially, mentally, emotionally and physically.

In judging the importance of this 3553(a) factor, the government asks the Court to consider that the defendant's fraud scheme has sentenced many of his victims to a lifetime of financial ruin:  "I have jeopardized my financial security as well as the security of my wife. . . . I am currently repaying these debts at the rate of $1500/month, which is the maximum I can afford on my fixed income.  At this rate, the loans will not

be paid off in my lifetime." LOSSAFF-00000140.[2]

Another victim, an eighty-five year old widow, describes the impact of the loss of her retirement income, and how that loss has adversely impacted her family relationships:

> "The loss of all my retirement money has been devastating to me and my family. The $772,790.00 dollars I was 'scamed' [sic] out of was to be used for my medical expenses [sic] and care. I have C.O.P.D. and Parkinsonians [sic]. . . . I believed that this investment opportunity would benefit my family has ended up causing a horrible 'rift' and division between my children. My health continues to deteriate [sic] and my monthly medical expenses continue to rise! I never envisioned myself living out the remaining years in poverty [sic] and with a broken heart. Emotionally and physically I'll never be the person I was before the 'scam'. . . . My family will forever suffer for the defendants' unconciencable [sic] greed and avarice."

LOSSAFF-00000002-3 (emphasis in original).

One of the defendant's victims, a woman disabled for more than 19 years, with a disabled husband, tells of the impact of the defendant's fraud on her husband as well as her mother:[3]

> The loss of money and the emotional trauma has made it almost impossible to cope with this and still be able to take care of my almost 85 year old mother (Mayre Barry) who was also a victim and lost her life savings of $772,790.00 to All American Coin. My husband and I partially support my mother's survival on limited funds monthly. Due to this 'scam' it has emotionally and spiritually broken our family and our trust

---

[2] Copies of these letters, Bates-labeled LOSSAFF-00000001-LOSSAFF-00000142, have previously been provided to defense counsel and the court under separate cover.

[3] See supra LOSSAFF-00000002-3.

> in human nature. What was once a loving, dynamic family is now a family that is permanetly [sic] splintered and shattered.

LOSSAFF-00000036.

For another victim, the defendant's fraud "turned my hopes for financial security into a living nightmare for me and my family." LOSSAFF-00000047. The financial loss for this victim also caused other problems: "MY wife was forced to return to work to help pay my debts and to get adequate health insurance coverage." Id.

People who believed the lies told by the defendant and his employees, who believed they were securing their financial future, now must deal with the harsh reality that they are worse off because of the defendant: "I was forced to go back to work . . . . I have a part time job as a school bus driver which begins at 3:30 am and ends 6:00-7:00 pm many days of the week and sometimes on week-ends. I also took out a home equity loan on my house[.]" LOSSAFF-00000127.

The defendant's fraud has impacted the quality of the lives of his many victims: "I was forced to give up my golfing, traveling, restaurants and to see my relatives in Canada, neglecting my grandchildren's education fund and special events i.e. birthdays and Christmas holidays. Id.

These letters demonstrate the financial losses suffered by the defendant's victims. These victims trusted their money to the defendant and other telemarketers at the Subject Companies. The injury suffered by these victims, however, goes beyond purely financial loss. As can be seen in the following quotes from victim impact letters, many victims suffered injury that could never be remedied with money:

> Physically, due to increased stress, I have suffered eight episodes of diverticulosis, one of which I lost so much blood that I lost consciousness and suffered a concussion. I spent four days in the hospital and was given a blood transfusion. I am now underweight from the emotional and physical toll this coin scam has caused me. . . . I suffer from depression, insomnia, and fits of anger. It has been difficult to sleep and feel good for four years. I have lost weight and have aged beyond my years. I am angry that I carry

7

>    this enormous debt and that I cannot retire."

Id.

Some victims have also suffered intrafamilial strains due to the defendant's fraud:

>    Burdening my family with this financial
>    nightmare and losing their trust and respect
>    have been the hardest part.  It has caused so
>    much pain, strife, and suffering to those I
>    love.  I have failed them, especially my
>    wife, to whom I have been married for over
>    forty years.  She feels hurt, betrayed and
>    have suffered enormously from this financial
>    catastrophe.

LOSSAFF-00000047.

For others, the loss of self-esteem resulting from being defrauded by the defendant has been significant:  "The stress and damage to my self-esteem and ability to trust other people, even my own judgment, is perhaps the highest cost I have paid.  I have at times considered committing suicide because of the lack of hope and shame I feel because I allowed myself to be swindled."  LOSSAFF-00000133.  "I often feel like I will never be able to recover my self-worth, much less my savings."  Id.

The defendant's fraud has forced victims to make unthinkable choices in their daily lives:  "It was difficult to ignore the constant stress caused by the scam.  It was a constant reminder that drained my energy level and definitely affected my health and life style.  Medical and dental needs were set aside for lack of funds."  LOSSAFF-00000138.

Because of his supervisory role in the Subject Companies, this defendant is better able than most criminal defendants to replicate his criminal activities in the future, or to train others to commit this crime at his behest.  Therefore, the 3553(a) factor of protecting the public from future crimes of this defendant weighs in favor of a Guidelines sentence.

###    D.   Specific Deterrence

A Guidelines sentence, in addition to promoting respect for the law and protecting the public, will also serve the purpose of specific deterrence.  For eight years, the defendant used the Subject Companies to steal millions of dollars from

victims throughout the United States. During that time, the defendant earned $1,122,700 from this fraud. A Guidelines sentence is appropriate to stress not only the impact of this crime on his victims, but to ensure that this defendant not continue this behavior upon his release.

### E. General Deterrence

A Guidelines sentence would provide a significant deterrent effect to other similarly situated people. The sentence imposed by this court will have a significant impact on the coin industry on Long Island, and throughout the country.

This case, and the case of United States v. Michael Romano, 09-CR-168, a coin fraud case involving the defendant's brother, have received media coverage in New York, as well as coin magazines. See, e.g., Carl MacGowan, "9 to be arraigned in rare coin scheme," NEWSDAY, Nov. 24, 2008; Steve Roach, "Court convicts coin dealers" COIN WORLD, July 11, 2011 (Michael Romano and William Kearney); Robert E. Kessler, "Pair convicted in coin swindle," NEWSDAY, July 13, 2011 (same). Joseph Romano's 15 year sentence also received media attention. Robert E. Kessler, "Long Island con man sentenced to 15 years," NEWSDAY, February 9, 2012. The sentence imposed in this case will send a message to people in the coin telemarketing business who may be engaging in fraud, and to those who may be considering using the coin industry as the means to commit fraud.

Here, the Subject Companies, over a period of eight years, defrauded victims from all fifty states. The magnitude of this type of fraud, coupled with resource constraints and jurisdictional limitations, makes it difficult, if not impossible, for local, county or state law enforcement to adequately investigate and prosecute these criminal conspiracies.

These prosecutions are by their nature labor-intensive. In this case, this defendant, his two brothers and his brother-in-law, were brought to justice after law enforcement reviewed thousands of financial transactions; located and interviewed potential victims throughout the United States; and reviewed thousands of invoices, to determine the extent of the fraud. For that reason, the results of these prosecutions will be viewed with greater interest than other cases. These facts increase the importance of the general deterrence factor of the sentence in this case, weighing in favor of a Guidelines sentence.

IV. <u>Conclusion</u>

The defendant comes before the court as a salesman who rose to the position of supervisor who committed, and trained others to commit, a massive fraud, stealing from victims in all 50 states. This case, and its companion case, <u>United States v. Michael Romano</u>, 09-CR-168, have put many people on notice about the consequences of defrauding coin purchasers.

The defendant's advisory Guidelines range accurately reflects the extent of the harm caused by this defendant's crime: (1) his gain from the offense; (2) the number of victims; (3) the vulnerability of his victims; and (4) his managerial role in the fraud. The defendant's advisory Guidelines range also appropriately accounts for the factors set forth in 18 U.S.C. § 3553(a).

For the foregoing reasons, and based on a balancing of the factors in 18 U.S.C. § 3553(a), including the seriousness of the offense, general and specific deterrence, and protection of the public from further crimes of this defendant, the Court should sentence this defendant within the applicable advisory Guidelines range of 108 to 135 months.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/ Thomas M. Sullivan
Thomas M. Sullivan
Lara Treinis Gatz
Assistant U.S. Attorneys
(631) 715-7865/7913

cc: Clerk of Court (JFB)
Brian J. Davis, Esq. (By Electronic Mail)
Gregory Giblin, U.S. Probation Officer (By Electronic Mail)